# EXHIBIT 8

KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Christie M. Alcala
To Call Writer Directly:
+1 713 836 3367
christie.alcala@kirkland.com

609 Main Street
Houston, TX 77002
United States

+1 713 836 3600

www.kirkland.com

Facsimile:
+1 713 836 3601

April 7, 2025

**VIA ELECTRONIC MAIL TO melbprice@yahoo.com**
**AND OVERNIGHT MAIL**

Melissa O'Blenis
7637 SW 65th Place Road
Ocala, FL 34474

***RE: Your Continuing Obligations to Argano, LLC***

Dear Ms. O'Blenis:

I am writing on behalf of Argano, LLC (collectively, with its subsidiaries, the "***Company***") to formally place you on notice of your continuing post-employment obligations to the Company, including under the Restrictive Covenant Agreement between you and the Company (the "***Agreement***"), a copy of which is enclosed. Capitalized terms used in this letter but not defined in the letter have the meaning given to them in the Agreement.

The Company has become aware that since the separation of your employment with the Company on or about February 14, 2025, you have commenced employment with Donyati, LLC or one of its affiliates ("***Donyati***"). As there is no doubt that your new employer would unfairly benefit from the Company's confidential information, we want to make absolutely clear that you are prohibited, both under the Agreement and applicable law, from disclosing or using any such information in your new position with Donyati.

While you should independently review all of the obligations under the Agreement, please be aware that in addition to your confidentiality obligations, you agreed that during your employment with the Company and for the 12 months thereafter, you would not, directly or indirectly, on your own behalf or another's behalf,

1. engage in or assist others in soliciting, recruiting or hiring any persons employed by the Company in the 12 months prior to your last day of employment with the Company;

2. solicit or contact or assist any other person or Entity to solicit or contact any Company Customer for purposes of offering or accepting goods or services similar to or competitive with those offered by the Company;

3. enter into an agreement with or accept business from any Company Customer with respect to goods or services similar to or competitive with those offered by the Company; or

4. take any action that has the purpose of interfering in the relationship between the Company and any of its vendors.

To assess your compliance with your ongoing obligations, the Company requests that you please provide by April 14, 2025, confirmation in writing that you (i) will not solicit any of the Company's employees or clients, (ii) have not misappropriated or disclosed any Confidential Information to any third party, including Donyati, (iii) returned to the Company, all Company property, Confidential Information and other proprietary materials, and (iv) will comply with each and every post-employment restriction by which you are bound.

The Company takes your continuing obligations seriously and expects that you will also. Be advised that the Company has contacted Donyati about these matters and expects Donyati to respect these obligations. If you fail to timely respond to this letter, the Company may be forced to take legal action to protect its business interests. The Company reserves all of its rights and remedies, and nothing in the letter should be construed as a waiver, relinquishment or election of rights or remedies by the Company.

If you or your legal counsel have any questions about this letter or the agreement referenced in it, please do not hesitate to contact me.

Sincerely,

Christie M. Alcalá

argano

**RESTRICTIVE COVENANTS**

*This document applies to all Argano employees and its affiliates to include: ArganoKeste, ArganoArbela, ArganoaMind, ArganoCSS, ArganolnterRel, ArganoNorthPoint, ArganoEchelon, ArganoSCM02, ArganoMS3, ArganoBigCompass and ArganoUV*

This is an agreement (the "Agreement") dated as of 1/1/25**,** by and between Argano, LLC, (hereinafter referred to as "Company"), and Melissa O'Blenis**,** an individual (hereinafter referred to as "Employee"). In consideration of the promises and covenants set forth in this Agreement, the sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1. Employment.**

Company agrees to employ Employee, and Employee agrees to accept employment, in the position described on Exhibit A. Employee shall faithfully perform the duties of such position. Employment between the Company and Employee is terminable at will-i.e., it may be terminated at any time by either party, with or without cause.

**2. Use and Disclosure of Goodwill and Confidential Information Only for Company Purposes.**

a) The Employee understands and acknowledges that because of the Employee's experience with and relationship to the Company, the Employee [will have/has had and will continue to have] access to and [will learn/has learned and will continue to learn] about much or all of the Company's customers, including, but not limited to, names of contacts and persons with responsibility with respect to the Company Business, phone numbers, addresses, email addresses, order history, order preferences, chain of command, pricing information, and other information identifying facts and circumstances specific to the customer and relevant to the Company Business. The Employee understands and acknowledges that loss of any such customer relationship or Goodwill will cause significant and irreparable harm to the Company.

b) Employee understands and acknowledges that Company has invested, and continues to invest, substantial time, money, and specialized knowledge into developing its resources, creating a customer base, generating customer and potential customer lists, training its employees, and improving its offerings in Company Business. The Employee understands and acknowledges that as a result of these efforts, the Company has created, and continues to use and create, Confidential Information. This Confidential Information provides the Company with a competitive advantage over others in the marketplace.

c) To perform the duties associated with his or her position, and in reliance on Employee's promises in this Agreement, including Employee's promise and covenant not to disclose or use Confidential Information except for the benefit of the Company, Company will provide Employee with, and access to, Confidential Information during Employee's employment with Company in conjunction the performance of Employee's duties. In addition, in reliance on the promises in this Agreement, Company will provide access to Employee about its customers and employ Employee to develop, protect, and promote the Goodwill between the Company and its customers and vendors.

**3. Covenants Not to Use or Disclose Confidential Information.**

a) The Employee agrees and covenants:

i) to treat all Confidential Information as strictly confidential;

ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or part, to any Entity or person whatsoever (including other Company employees), and not to permit or assist others to do so, except in conjunction with the Company Business and, in any event, not to anyone outside of the direct employ of the Company; and

iii) not to directly or indirectly access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Company, and not to permit or assist others to do so, except as required in the performance of the Employee's authorized employment duties to the Company.

b) The Employee understands and acknowledges that the Employee's obligations under this Agreement regarding Confidential Information begins immediately upon the Employee first having access to any Confidential Information (whether before or after beginning employment with the Company) and shall continue during and after the Employee's employment by the Company until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

c) Employee is hereby notified in accordance with the Defend Trade Secrets Act of 2016 that the Employee will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that:

i) is made (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or

ii) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding. The Employee is further notified that if the Employee files a lawsuit for retaliation against the Company for reporting a suspected violation of law, the Employee may disclose the Company's trade secrets to the Employee's attorney and use the trade secret information in the court proceeding if the Employee: (i) files any document containing the trade secret under seal; and

iii) does not disclose the trade secret, except pursuant to court order.

d) Nothing in this Agreement prohibits the Employee from making any disclosure required by law or court subpoena or order or from any communication with any governmental official in his or her official capacity. Further, nothing in this Agreement in any way prohibits or is intended to restrict or impede, and shall not be interpreted or understood as restricting or impeding, the Employee from discussing the terms and conditions of Employee's employment with co-workers or union representatives or otherwise exercising Employee's rights under Section 7 of the National Labor Relations Act.

**4. Delivery of Company Property**

Employee recognizes that all documents, magnetic media and other tangible items which contain Confidential Information are the property of Company exclusively. Upon request by Company and, in any event, immediately upon termination of Employee's employment with Company, Employee shall promptly return to Company all Confidential Information and Company Property within Employee's possession and control.

Employee shall not erase or sabotage any information contained on any media owned by the Company but shall instead return all such computers, tablets, flash drives, or other magnetic media to the Company when requested by the Company and immediately upon termination of employment. After returning such information, Employee shall not retain any copies, electronic or otherwise, of any Confidential Information.

**5. Restrictive Covenants Regarding Company Employees and Customers:**

a) Non-Solicitation of Employees. During Employee's employment with Company and for a period of twelve (12) months thereafter, Employee shall not, directly or indirectly, on Employee's own or another's behalf, engage in or assist others in soliciting, hiring, recruiting, or attempting to solicit, hire, or recruit any employee who is employed by the Company on the last day of Employee's employment or any person employed by the Company in the twelve (12) months preceding Employee's last day of employment with whom the Employee had regular business contact.

b) Non-Solicitation of Customers. During Employee's employment with Company and for a period of twelve (12) months thereafter, Employee shall not, directly or indirectly, on Employee's own or another's behalf, solicit, contact, or attempt to solicit or contact, or assist any other person or Entity to do so, any Company Customer for purpose of offering or accepting goods or services similar to or competitive with those offered by the Company or relating to the Company Business.

c) Non-Interference in Customer Relationships. During Employee's employment with Company and for a period of twelve (12) months thereafter, Employee shall not, directly or indirectly, on Employee's own or another's behalf, (i) enter into an agreement with any Company Customer to provide goods and services similar to or competitive with those offered by the Company or relating to the Company Business, (ii) accept business from any Company Customer similar to or competitive with those offered by the Company or relating to the Company Business, (iii) encourage, facilitate, or assist any Company Customer to provide goods and services similar to or competitive with those offered by the Company or relating to the Company Business, (iv) provide goods or services relating to the Company Business to any Company Customer, whether as an employee, independent contractor, or otherwise; or (v) otherwise interfere in the relationship between the Company and any Company Customer.

d) Interference with Vendors. During Employee's employment with Company and for a period of twelve (12) months thereafter, Employee shall not, directly or indirectly, on Employee's own or another's behalf, take any action that has the purpose of interfering in the relationship between the Company and any of its vendors or that would otherwise foreseeably adversely affect the relationship between the Company and any of its vendors.

**6. Acknowledgements Regarding Other Promises and Covenants.**

With regard to the promises and covenants set forth in paragraph 5, Employee acknowledges and agrees that:

a) The restrictions are ancillary to an otherwise enforceable agreement including the provisions of this Agreement regarding the disclosure, ownership and use of the Confidential Information and Goodwill of Company;

b) The limitations as to time, geographical area, and scope of activity to be restricted are reasonable and acceptable to Employee, and do not impose any greater restraint than is reasonably necessary to protect the Goodwill and other legitimate business interests of Company;

c) The performance by Employee, and the enforcement by Company, of such promises and covenants will cause no undue hardship on Employee; and

d) The time periods covered by the promises and covenants will not include any period(s) of violation of, or any period(s) of time required for litigation brought by Company to enforce any such promise or covenant, it being understood that the extension of time provided in this paragraph 6(d) may not exceed one (1) years.

**7. Duty to Give Notice of Agreement.**

During employment by Company and the period of any post-employment obligation applicable hereunder, Employee shall provide written notice to any prospective employer of Employee's obligations under this Agreement, and shall provide a true copy hereof to such prospective employer at the outset of any communications about employment.

**8. Independent Elements.**

The parties acknowledge that the promises and covenants contained in paragraphs 3 through 5 above are essential independent elements of this Agreement and that, but for Employee agreeing to comply with them, Company would not employ Employee. Accordingly, the existence or assertion of any claim by Employee against Company, whether based on this Agreement or otherwise, shall not operate as a defense to Company's enforcement of the promises and covenants in paragraphs 3 through 5. An alleged or actual breach of the Agreement by Company will not be a defense to enforcement of any such promise or covenant, or other obligations of Employee to Company. The promises and covenants in paragraphs 3 through 5 will remain in full force and effect whether Employee is terminated by

Company or voluntarily resigns.

**9. Remedies for Breach of Agreement.**

Employee acknowledges that Employee's breach of any promise or covenant contained in paragraphs 3 through 5 will result in irreparable injury to Company and that Company's remedies at law for such a breach will be inadequate. Accordingly, Employee agrees and consents that Company, in addition to all other remedies available at law and in equity, shall be entitled to both preliminary and permanent injunctions to prevent and/or halt a breach or threatened breach by Employee of any such promise or covenant, and Employee waives the requirement of the posting of any bond in connection with such injunctive relief. Employee further acknowledges and agrees that the promises and covenants contained in paragraph 5 are ancillary to the otherwise enforceable promises contained herein and are reasonable and valid.

**10. Assignment.**

Company's rights and obligations under this Agreement shall inure to the benefit of and be binding upon Company's successors and assigns. Any successor or assign of Company is authorized to enforce the restrictive covenants of this Agreement as if the name of such successor or assign replaced Company throughout this Agreement. Since this Agreement is personal to Employee, Employee's obligation under this Agreement may not be assigned or transferred to any other person or Entity.

**11. Severability.**

Every portion of this Agreement is intended to be severable. Whenever possible, each such provision shall be interpreted in such manner as to be valid and enforceable under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, the prohibited or invalid provision(s) shall be deemed severed herefrom and shall be unenforceable to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement. The parties further agree that should any provision of this Agreement be prohibited by or invalid under applicable state law, this Agreement may be modified to the extent reasonable by a court of competent jurisdiction.

**12. Construction.**

In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by both Employee and Company and no presumption or burden of proof shall arise favoring or disfavoring either by virtue of the authorship of any of the provisions of this Agreement.

**13.Modifications/Waivers.**

A waiver of Employee's obligations under this Agreement or any other modification of this Agreement will be ineffective unless it is set forth in writing and signed by Employee and Company's President. If either party fails to insist that the other party perform any of the terms of this Agreement, or if Company does not attempt to enforce covenants or obligations of other employees, such failure shall not be construed as a waiver or estoppel by such party of any past, present, or further right granted under this Agreement and the obligations of both parties under this Agreement shall continue in full force and effect.

**14. Entire Agreement.**

This Agreement is the entire agreement of the parties and expressly supersedes all practices, understanding, and agreements, whether written or oral, not specifically set forth in this Agreement; except that Employee's obligations under this Agreement are in addition to any other enforceable obligations of Employee under any other written agreement with the Company and those enforceable obligations shall survive the execution and delivery of this Agreement.

**15. Choice of Law and Forum.**

This Agreement, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute, are governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the laws of any jurisdiction other than the State of Texas to apply. Any action or proceeding by either party to enforce this Agreement shall be brought only in any state or federal court located in or for Collin County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

**16. Definitions.**

For purposes hereof:

a) *"Agreement"* means this Employment Agreement.

b) *"Company Business"* means the marketing, sale and/or distribution of Oracle, Salesforce, Amazon Web Services or any Open Source technologies, applications, support and related services.

c) *"Company Customer(s)"* means any customer, or prospective customer of Company (i) about whom the Employee has trade secret or Confidential Information; or (ii) who was assigned to the Employee or any employee supervised by the Employee on behalf of the Company; or (iii) for whom the Employee performed services on behalf of the Company.

d) *"Company Property"* means all physical materials, documents, information, keys, computer software and hardware, including computers, mobile phones, tablets, flash drives, other magnetic media, manuals, data bases, product samples, notes, and any other equipment or items which Company provides for or to Employee or which otherwise belongs to the Company, and those documents and items which Employee may develop or help develop while in Company's employ, whether or not developed during regular working hours or on Company's premises. The term *"Company Property"* shall include the original of such materials, any copies thereof, any notes derived from such materials, and any derivative work of such materials.

e) *"Confidential Information"* means the trade secrets and other information developed, provided, or used by the Company that is not generally known to the public, in spoken, printed, electronic, magnetic or any form or medium and includes by way of example, but is not limited to business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, computer programs, computer software, applications, operating systems, software design, web design, work-in- process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists and information, supplier lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, customer information, customer lists, client information, client lists, manufacturing information, factory lists, distributor lists, and buyer lists of the Company or any existing or prospective customer, supplier, investor, or other associated third party, or of any other person or Entity that has entrusted information to the Company **in** confidence. The above list is not exhaustive, and *"Confidential Information"* also includes other information that is marked or otherwise identified or treated as confidential or proprietary or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used. *"Confidential Information"* includes those documents and items which Employee may develop or help develop while in Company's employ, whether or not developed during regular working hours or on Company's premises; provided, however, that *"Confidential Information"* shall not include information that is generally available to and known by

the public at the time of disclosure to the Employee, provided that the disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf or in concert with Employee. Unless the context requires otherwise, the term *"Confidential Information"* shall include the original of such materials, any copies thereof, any notes derived from such materials, and any derivative work of such materials.

e) *"Entity"* means and includes any partnership, association, corporation, limited liability company, trust, unincorporated organization or any other business entity or enterprise.

f) *"Goodwill"* means the intangible benefit of the relationships between the Company and its customers, vendors and employees.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

Melissa O'Blenis
Employee signature