# EXHIBIT 9

KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Christie M. Alcala
To Call Writer Directly:
+1 713 836 3367
christie.alcala@kirkland.com

609 Main Street
Houston, TX 77002
United States

+1 713 836 3600

www.kirkland.com

Facsimile:
+1 713 836 3601

April 7, 2025

**VIA ELECTRONIC MAIL TO ronald_guadagno@yahoo.com**
**AND OVERNIGHT MAIL**

Ronald Guadagno
1151 Estrella Dr.
Santa Barbara, CA 93110

***RE: Your Continuing Obligations to Argano, LLC***

Dear Mr. Guadagno:

I am writing on behalf of Argano, LLC (collectively, with its subsidiaries, the "***Company***") to formally place you on notice of your continuing post-employment obligations to the Company, including under the two separate Non-Solicitation and Confidentiality Agreements between you and Argano Holdings, LLC (the "***Agreement***"), copies of which are enclosed. Capitalized terms used in this letter but not defined in the letter have the meaning given to them in the Agreement.

The Company has become aware that since the separation of your employment with the Company in February 2025, you have commenced employment with Donyati, LLC or one of its affiliates ("***Donyati***"). As there is no doubt that your new employer would unfairly benefit from the Company's confidential information, we want to make absolutely clear that you are prohibited, both under the Agreement and applicable law, from disclosing or using any such information in your new position with Donyati.

While you should independently review all of the obligations under the Agreement, please be aware that in addition to your confidentiality obligations, you agreed that during your employment with the Company and for the 12 months thereafter, you would not, directly or indirectly, on your own behalf or another's behalf, engage in or assist others in soliciting, recruiting or hiring any persons employed by the Company in the 12 months prior to your last day of employment with the Company.

To assess your compliance with your ongoing obligations, the Company requests that you please provide by April 14, 2025, confirmation in writing that you (i) will not solicit any of the Company's employees, (ii) have not misappropriated or disclosed any Confidential Information to any third party, including Donyati, (iii) returned to the Company, all Company property,

KIRKLAND & ELLIS LLP



Confidential Information and other proprietary materials, and (iv) will comply with each and every post-employment restriction by which you are bound.

The Company takes your continuing obligations seriously and expects that you will also. Be advised that the Company has contacted Donyati about these matters and expects Donyati to respect these obligations. If you fail to timely respond to this letter, the Company may be forced to take legal action to protect its business interests. The Company reserves all of its rights and remedies, and nothing in the letter should be construed as a waiver, relinquishment or election of rights or remedies by the Company.

If you or your legal counsel have any questions about this letter or the agreement referenced in it, please do not hesitate to contact me.

Sincerely,

Christie M. Alcalá

# NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

**THIS NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT** (this "**Agreement**") is entered into effective as of January 3, 2023, by and between Argano Holdings, LLC, a Texas limited liability company (the "**Company**"), and the undersigned employee of a Subsidiary of the Company ("**Participant**").

## <u>RECITALS</u>:

A. Participant is currently an employee of a Subsidiary of the Company.

B. Contemporaneously with the execution and delivery of this Agreement, Participant is being granted certain Options (the "**Granted Options**") by the Company under the Argano Holdings, LLC Management Option Plan (the "**Plan**"), which Granted Options are being granted pursuant and subject to the terms and conditions of that certain Award Agreement, effective as of the date hereof, by and between the Company and Participant (the "**Award Agreement**").

C. The execution and delivery of this Agreement by Participant is a condition to Participant's receipt of the Granted Options, and the Company relied in good faith on Participant's agreement to execute and deliver this Agreement.

D. Participant acknowledges and agrees that the Company has developed and uses in its business Confidential Information (as defined below) which is vital to the success of the Company's business, and that Participant has become and/or may become acquainted with Confidential Information during the course of Participant's involvement with the Company.

E. Participant acknowledges and agrees that all Confidential Information is the exclusive property of the Company and may be protected by the Company as the Company deems appropriate.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein, and other good and valuable consideration, including, without limitation, the Granted Options, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **Defined Terms**.

   **A.** The term "**Person**" means any individual, sole proprietorship, partnership, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization, association, corporation, institution or other entity.

   **B.** The term "**Restricted Area**" means anywhere in the United States of America.

   **C.** The term "**Subsidiary**" means, with respect to a specified Person, any other Person of which, at the relevant determination time, the specified Person owns, directly or indirectly through another Person, at least a majority of the outstanding capital stock (or other shares or units of beneficial interest) entitled to vote generally.

2. **Non-Disclosure of Confidential Information**. Participant shall keep secret and hold in confidence, and shall not use for the benefit of Participant or any other Person (other than the Company or any of its Subsidiaries), any and all information relating to the Company or any of its Subsidiaries that is proprietary to the Company or any of its Subsidiaries which may include, without limitation, information about their respective lists, proprietary product or system specifications, proprietary software code, production and other processes, data, compositions, designs, sketches, photographs, graphs, drawings, samples, technical know-how, inventions and ideas, past, current and planned research and development, vendor lists, customer lists, current and anticipated customer requirements, expert lists, price lists, market studies, financial statements and information and business plans (collectively, "**Confidential Information**"), other than: (i) information that has become generally available to the public other than as a result of a disclosure by Participant in breach of this Agreement, (ii) information that becomes available to Participant on a non-confidential basis from a third party having, to Participant's knowledge, no obligation of confidentiality to the Company or any of its Subsidiaries or (iii) information that is required to be disclosed by any applicable law. In connection with disclosure of Confidential Information under clause (iii) above, Participant shall give the Company timely prior notice of the anticipated disclosure and the parties hereto shall cooperate in designing reasonable procedural and other safeguards to preserve, to the maximum extent possible, the confidentiality of such material.

3. **Non-solicitation**.

   A. **Non-solicitation**. Participant agrees that Participant shall not, during his term as an employee, consultant or non-employee manager of the Company or any Subsidiary thereof, and for a period of twelve (12) months following the termination of such status for any reason, within the Restricted Area, individually or in conjunction with others, directly or indirectly, whether for his own account or that of any other Person:

      i. solicit, call on, transact or engage in any direct or indirect business activity for a purpose competitive with the business of the Company or any of its Subsidiaries, with any distributors, suppliers, experts or customers of the Company or any Subsidiary thereof with whom Participant shall have dealt on behalf of the Company or any of its Subsidiaries at any time during the period commencing one (1) year immediately prior to any termination of his relationship with the Company;

      ii. solicit, employ or retain, or seek to solicit, employ or retain, or arrange to have any other Person solicit, employ or retain, any Person who has been employed or retained by the Company or any of its Subsidiaries as an employee, consultant, expert or independent contractor at any time during the period commencing one (1) year immediately prior to any termination of his relationship with the Company; *provided* that general solicitations of employment for employees through newspapers, periodicals or trade publications or through a professional recruiter, in all cases not specifically directed at such personnel, will not violate this clause;

      iii. interfere with, disrupt or attempt to disrupt, any then present or prospective relationship, contractual or otherwise, between the Company or any of its Subsidiaries, on the one hand, and any employee, consultant, agent, independent contractor, expert, supplier, distributor or customer thereof, on the other hand; or

iv. make or publish, either orally or in writing, any disparaging, defamatory or derogatory comments about the Company or any of its Subsidiaries, or any of their respective officers, employees, managers, equityholders, agents, representatives, products, services or practices to any Person.

4. **Severability**. If any provision of this Agreement is held to be illegal, invalid or unenforceable for any reason, such provision shall be adjusted rather than voided, if possible, in order to achieve the intent of the parties hereto. In such event, all other provisions of this Agreement shall be deemed legal, valid and enforceable to the fullest extent possible. If any provision of this Agreement, or any part thereof, is held to be illegal, invalid or unenforceable because of the consideration paid for such provision, the duration of such provision or the geographic area covered thereby, the parties agree that the court of competent jurisdiction making such determination shall have the power to reduce the duration and/or geographic scope of such provision, and/or to delete specific words or phrases, and, in its redacted form, such provision shall then be enforceable and shall be enforced. The scope of the agreements contained herein shall be as broad and shall be given the maximum force, effect and application as may be permitted under any applicable law.

5. **Necessity and Reasonableness**. The parties hereto agree that the agreements provided for herein, including, without limitation, the applicable term for each such agreement and the definition of Restricted Area encompassed herein, are necessary and reasonable in order to induce the Company to grant the Granted Options and to protect the Company's conduct of its business and the utilization of the assets, tangible and intangible, of its business, including, without limitation, goodwill.

6. **Equitable Relief**. It is expressly agreed among the parties hereto that monetary damages would be inadequate to compensate the Company for any breach by Participant of this Agreement. Accordingly, Participant agrees and acknowledges that any such breach or threatened breach is reasonably likely to cause irreparable injury to the Company and that, in addition to any other remedies at law or in equity to which the Company may be entitled and which may be ordered by a court of competent jurisdiction, the Company shall, as a matter of right, be entitled to obtain temporary and permanent injunctive relief in any court of competent jurisdiction against the actual or threatened breach of this Agreement or the continuation of any such breach by Participant.

7. **Miscellaneous**.

A. **Assignment; Successors and Assigns; Third Party Beneficiaries**. Participant shall not be permitted to assign his rights or obligations under this Agreement without the prior written consent of the Company. The Company shall have the right to assign, whether in whole or in part, its rights and obligations under this Agreement; *provided*, *however*, that the Company shall provide Participant with written notice of such assignment. This Agreement and the provisions hereof shall inure to the benefit of, and be binding upon, the respective successors, permitted assigns, heirs, executors, trustees, legal and personal representatives and administrators of the parties hereto. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any person or entity not party to this Agreement.

B. **Notices**. All notices, consents, demands and other communications required or permitted to be given or delivered under or by reason of this Agreement shall be in writing and shall be

deemed to have been given (i) when personally delivered to the recipient, (ii) five (5) business days from the date on which deposited with the U.S. Postal Service via first class, registered or certified mail, postage prepaid, return receipt requested, (iii) one (1) business day from the date on which sent via reputable overnight courier service, such as Federal Express, with all charges prepaid or (iv) when transmitted via facsimile, e-mail or other means of electronic transmission, with a confirmation copy delivered by any other means permitted under this Section 7(B). All such notices, demands and communications to a party hereto shall be sent to the address or facsimile number indicated for such party below, unless another address is specified by such party in a notice given to the other party hereto in accordance with this Section 7(B).

If to the Company, at:
6100 W. Plano Parkway, Suite 1800
Plano, TX 75093
Attention: Chip Register
E-mail: chip.register@argano.com

With a copy (which shall not constitute notice) to:

Katten Muchin Rosenman LLP
2121 N Pearl St., Suite 1100
Dallas, Texas 75201
Attention: Victor B. Zanetti, Esq.
Telephone: (214) 765-3606
E-mail: vic.zanetti@katten.com

If to Participant, at the address set forth on the signature page hereto.

C. **Governing Law and Venue**. This Agreement shall in all respects be construed, interpreted and enforced in accordance with, and governed by, the laws of the State of Texas, without giving effect to any choice of law or conflict of laws provision. The sole and exclusive venue for any dispute arising from or relating to this Agreement shall be in the State of Texas.

D. **Entire Agreement**. This Agreement, the Plan, the Award Agreement and any employment agreement entered into by and between Participant and the Company or any Subsidiary thereof constitute the entire agreement among the parties hereto with respect to the subject matter hereof, and supersede all prior or contemporaneous oral or written agreements among the parties hereto with respect to the subject matter hereof.

E. **Counterparts; Electronic Transmissions**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which when taken together shall constitute one and the same document. Any facsimile or electronically transmitted copies hereof or signatures hereon shall be deemed originals for all purposes.

F. **Amendment and Waiver**. No amendment or modification of any provision of this Agreement shall be binding, unless specifically set forth in writing and signed by all parties hereto. No waiver of any provision of this Agreement shall be binding upon the party against whom it is sought to be enforced, unless specifically set forth in writing and signed by such party. A

waiver by any party hereto of any of the terms or conditions of this Agreement, or of any breach hereof, in any one instance shall not be deemed or construed to be a waiver of such terms or conditions in the future, or of any subsequent breach thereof.

G. **Cumulative Remedies**. All remedies and rights of each party hereto contained in this Agreement shall be cumulative, and none of them shall be in limitation of any other remedy or right which such party may have at law, in equity or otherwise. The failure by any party hereto at any time to enforce or require performance of any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision or to affect either the validity of this Agreement or the right of any party hereto to thereafter enforce each and every provision of this Agreement.

H. **Interpretation**. When a reference is made in this Agreement to a "Section" such reference is to the corresponding Section of this Agreement unless otherwise indicated. The words "this Agreement", "herein", "hereby", "hereunder" and "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Section, unless expressly so limited. Captions and paragraph headings used in this Agreement are for convenience only and are not a part of this Agreement, and shall not be used in its interpretation. Whenever the language of this Agreement addresses matters "among" the parties, references to the "other parties" or otherwise focuses on relations or duties of the parties hereto, the parties to be governed or bound by this language, unless the context requires otherwise, will be Participant and the Company. Unless the context precludes such uses, pronouns used in this Agreement will be deemed to include corresponding masculine, feminine and neuter forms and the singular form of nouns, pronouns and verbs shall include the plural and vice versa. Each party hereto acknowledges and agrees that such party has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement, and that such party has executed the same with the consent and upon the advice of said independent counsel. The language of this Agreement is and will be deemed to be the language chosen by the parties hereto jointly to express their mutual intent and understanding. Accordingly, no rule of construction that would require the interpretation of any ambiguities in this Agreement against the drafting party will be applied against any of the parties hereto with respect to this Agreement or any of its provisions. The recitals set forth at the beginning of this Agreement are incorporated herein by this reference.

I. **Attorneys' Fees**. In the event any legal action is brought to enforce, defend or interpret any of the terms of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable attorneys' fees, costs and expenses incurred by the prevailing party in said legal action, regardless of whether such legal action is prosecuted to judgment or ruling.

*****

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first set forth above.

**PARTICIPANT:**

DocuSigned by:
Ronald Guadagno
B797936CE0D44FD...

Name: Ronald Guadagno

**Address**: 1151 Estrella Dr.

Santa Barbara, CA 93110

**Email**: ron.guadagno@argano.com

**COMPANY:**

ARGANO HOLDINGS, LLC

By: Harry B. Register, III
Title: Chief Executive Officer

# NON-SOLICITATION
# AND CONFIDENTIALITY AGREEMENT

**THIS NON-COMPETITION, NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT** (this "**Agreement**") is entered into effective as of April 01, 2024, by and between Argano Ultimate Holdings, LLC, a Texas limited liability company (the "**Company**"), and the undersigned employee of a Subsidiary of the Company ("**Participant**").

## RECITALS:

A. Participant is currently an employee of a Subsidiary of the Company.

B. Contemporaneously with the execution and delivery of this Agreement, Participant is being granted certain Options (the "**Granted Options**") by the Company under the Argano Ultimate Holdings, LLC Management Option Plan (the "**Plan**"), which Granted Options are being granted pursuant and subject to the terms and conditions of that certain Award Agreement, effective as of the date hereof, by and between the Company and Participant (the "**Award Agreement**").

C. The execution and delivery of this Agreement by Participant is a condition to Participant's receipt of the Granted Options, and the Company relied in good faith on Participant's agreement to execute and deliver this Agreement.

D. Participant acknowledges and agrees that the Company has developed and uses in its business Confidential Information (as defined below) which is vital to the success of the Company's business, and that Participant has become and/or may become acquainted with Confidential Information during the course of Participant's involvement with the Company.

E. Participant acknowledges and agrees that all Confidential Information is the exclusive property of the Company and may be protected by the Company as the Company deems appropriate.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements set forth herein, and other good and valuable consideration, including, without limitation, the Granted Options, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

**1. Defined Terms**.

**A.** The term "**Person**" means any individual, sole proprietorship, partnership, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization, association, corporation, institution or other entity.

**B.** The term "**Restricted Area**" means anywhere in the United States of America.

**C.** The term "**Subsidiary**" means, with respect to a specified Person, any other Person of which, at the relevant determination time, the specified Person owns, directly or indirectly through another Person, at least a majority of the outstanding capital stock (or other shares or units of beneficial interest) entitled to vote generally.

2. **Non-Disclosure of Confidential Information**. Participant shall keep secret and hold in confidence, and shall not use for the benefit of Participant or any other Person (other than the Company or any of its Subsidiaries), any and all information relating to the Company or any of its Subsidiaries that is proprietary to the Company or any of its Subsidiaries which may include, without limitation, information about their respective lists, proprietary product or system specifications, proprietary software code, production and other processes, data, compositions, designs, sketches, photographs, graphs, drawings, samples, technical know-how, inventions and ideas, past, current and planned research and development, vendor lists, customer lists, current and anticipated customer requirements, expert lists, price lists, market studies, financial statements and information and business plans (collectively, "**Confidential Information**"), other than: (i) information that has become generally available to the public other than as a result of a disclosure by Participant in breach of this Agreement, (ii) information that becomes available to Participant on a non-confidential basis from a third party having, to Participant's knowledge, no obligation of confidentiality to the Company or any of its Subsidiaries or (iii) information that is required to be disclosed by any applicable law. In connection with disclosure of Confidential Information under clause (iii) above, Participant shall give the Company timely prior notice of the anticipated disclosure and the parties hereto shall cooperate in designing reasonable procedural and other safeguards to preserve, to the maximum extent possible, the confidentiality of such material.

3. **Non-solicitation**.

   A. **Non-solicitation**. Participant agrees that Participant shall not, during his term as an employee, consultant or non-employee manager of the Company or any Subsidiary thereof, and for a period of twelve (12) months following the termination of such status for any reason, within the Restricted Area, individually or in conjunction with others, directly or indirectly, whether for his own account or that of any other Person:

      i. solicit, call on, transact or engage in any direct or indirect business activity for a purpose competitive with the business of the Company or any of its Subsidiaries, with any distributors, suppliers, experts or customers of the Company or any Subsidiary thereof with whom Participant shall have dealt on behalf of the Company or any of its Subsidiaries at any time during the period commencing one (1) year immediately prior to any termination of his relationship with the Company;

      ii. solicit, employ or retain, or seek to solicit, employ or retain, or arrange to have any other Person solicit, employ or retain, any Person who has been employed or retained by the Company or any of its Subsidiaries as an employee, consultant, expert or independent contractor at any time during the period commencing one (1) year immediately prior to any termination of his relationship with the Company; *provided* that general solicitations of employment for employees through newspapers, periodicals or trade publications or through a professional recruiter, in all cases not specifically directed at such personnel, will not violate this clause;

      iii. interfere with, disrupt or attempt to disrupt, any then present or prospective relationship, contractual or otherwise, between the Company or any of its Subsidiaries, on the one hand, and any employee, consultant, agent, independent contractor, expert, supplier, distributor or customer thereof, on the other hand; or

iv. make or publish, either orally or in writing, any disparaging, defamatory or derogatory comments about the Company or any of its Subsidiaries, or any of their respective officers, employees, managers, equityholders, agents, representatives, products, services or practices to any Person.

4. **Severability**. If any provision of this Agreement is held to be illegal, invalid or unenforceable for any reason, such provision shall be adjusted rather than voided, if possible, in order to achieve the intent of the parties hereto. In such event, all other provisions of this Agreement shall be deemed legal, valid and enforceable to the fullest extent possible. If any provision of this Agreement, or any part thereof, is held to be illegal, invalid or unenforceable because of the consideration paid for such provision, the duration of such provision or the geographic area covered thereby, the parties agree that the court of competent jurisdiction making such determination shall have the power to reduce the duration and/or geographic scope of such provision, and/or to delete specific words or phrases, and, in its redacted form, such provision shall then be enforceable and shall be enforced. The scope of the agreements contained herein shall be as broad and shall be given the maximum force, effect and application as may be permitted under any applicable law.

5. **Necessity and Reasonableness**. The parties hereto agree that the agreements provided for herein, including, without limitation, the applicable term for each such agreement and the definition of Restricted Area encompassed herein, are necessary and reasonable in order to induce the Company to grant the Granted Options and to protect the Company's conduct of its business and the utilization of the assets, tangible and intangible, of its business, including, without limitation, goodwill.

6. **Equitable Relief**. It is expressly agreed among the parties hereto that monetary damages would be inadequate to compensate the Company for any breach by Participant of this Agreement. Accordingly, Participant agrees and acknowledges that any such breach or threatened breach is reasonably likely to cause irreparable injury to the Company and that, in addition to any other remedies at law or in equity to which the Company may be entitled and which may be ordered by a court of competent jurisdiction, the Company shall, as a matter of right, be entitled to obtain temporary and permanent injunctive relief in any court of competent jurisdiction against the actual or threatened breach of this Agreement or the continuation of any such breach by Participant.

7. **Miscellaneous**.

A. **Assignment; Successors and Assigns; Third Party Beneficiaries**. Participant shall not be permitted to assign his rights or obligations under this Agreement without the prior written consent of the Company. The Company shall have the right to assign, whether in whole or in part, its rights and obligations under this Agreement; *provided*, *however*, that the Company shall provide Participant with written notice of such assignment. This Agreement and the provisions hereof shall inure to the benefit of, and be binding upon, the respective successors, permitted assigns, heirs, executors, trustees, legal and personal representatives and administrators of the parties hereto. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any person or entity not party to this Agreement.

B. **Notices**. All notices, consents, demands and other communications required or permitted to be given or delivered under or by reason of this Agreement shall be in writing and shall be

deemed to have been given (i) when personally delivered to the recipient, (ii) five (5) business days from the date on which deposited with the U.S. Postal Service via first class, registered or certified mail, postage prepaid, return receipt requested, (iii) one (1) business day from the date on which sent via reputable overnight courier service, such as Federal Express, with all charges prepaid or (iv) when transmitted via facsimile, e-mail or other means of electronic transmission, with a confirmation copy delivered by any other means permitted under this Section 7(B). All such notices, demands and communications to a party hereto shall be sent to the address or facsimile number indicated for such party below, unless another address is specified by such party in a notice given to the other party hereto in accordance with this Section 7(B).

If to the Company, at:
6100 W. Plano Parkway, Suite 1800
Plano, TX 75093
Attention: Chip Register
E-mail: chip.register@argano.com

With a copy (which shall not constitute notice) to:

Katten Muchin Rosenman LLP
2121 N Pearl St., Suite 1100
Dallas, Texas 75201
Attention: Victor B. Zanetti, Esq.
Telephone: (214) 765-3606
E-mail: vic.zanetti@katten.com

If to Participant, at the address set forth on the signature page hereto.

C. **Governing Law and Venue**. This Agreement shall in all respects be construed, interpreted and enforced in accordance with, and governed by, the laws of the State of Texas, without giving effect to any choice of law or conflict of laws provision. The sole and exclusive venue for any dispute arising from or relating to this Agreement shall be in the State of Texas.

D. **Entire Agreement**. This Agreement, the Plan, the Award Agreement and any employment agreement entered into by and between Participant and the Company or any Subsidiary thereof constitute the entire agreement among the parties hereto with respect to the subject matter hereof, and supersede all prior or contemporaneous oral or written agreements among the parties hereto with respect to the subject matter hereof.

E. **Counterparts; Electronic Transmissions**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which when taken together shall constitute one and the same document. Any facsimile or electronically transmitted copies hereof or signatures hereon shall be deemed originals for all purposes.

F. **Amendment and Waiver**. No amendment or modification of any provision of this Agreement shall be binding, unless specifically set forth in writing and signed by all parties hereto. No waiver of any provision of this Agreement shall be binding upon the party against whom it is sought to be enforced, unless specifically set forth in writing and signed by such party. A

waiver by any party hereto of any of the terms or conditions of this Agreement, or of any breach hereof, in any one instance shall not be deemed or construed to be a waiver of such terms or conditions in the future, or of any subsequent breach thereof.

G. **Cumulative Remedies**. All remedies and rights of each party hereto contained in this Agreement shall be cumulative, and none of them shall be in limitation of any other remedy or right which such party may have at law, in equity or otherwise. The failure by any party hereto at any time to enforce or require performance of any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision or to affect either the validity of this Agreement or the right of any party hereto to thereafter enforce each and every provision of this Agreement.

H. **Interpretation**. When a reference is made in this Agreement to a "Section" such reference is to the corresponding Section of this Agreement unless otherwise indicated. The words "this Agreement", "herein", "hereby", "hereunder" and "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Section, unless expressly so limited. Captions and paragraph headings used in this Agreement are for convenience only and are not a part of this Agreement, and shall not be used in its interpretation. Whenever the language of this Agreement addresses matters "among" the parties, references to the "other parties" or otherwise focuses on relations or duties of the parties hereto, the parties to be governed or bound by this language, unless the context requires otherwise, will be Participant and the Company. Unless the context precludes such uses, pronouns used in this Agreement will be deemed to include corresponding masculine, feminine and neuter forms and the singular form of nouns, pronouns and verbs shall include the plural and vice versa. Each party hereto acknowledges and agrees that such party has been represented by independent counsel of its choice throughout all negotiations that have preceded the execution of this Agreement, and that such party has executed the same with the consent and upon the advice of said independent counsel. The language of this Agreement is and will be deemed to be the language chosen by the parties hereto jointly to express their mutual intent and understanding. Accordingly, no rule of construction that would require the interpretation of any ambiguities in this Agreement against the drafting party will be applied against any of the parties hereto with respect to this Agreement or any of its provisions. The recitals set forth at the beginning of this Agreement are incorporated herein by this reference.

I. **Attorneys' Fees**. In the event any legal action is brought to enforce, defend or interpret any of the terms of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable attorneys' fees, costs and expenses incurred by the prevailing party in said legal action, regardless of whether such legal action is prosecuted to judgment or ruling.

*****

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first set forth above.

**PARTICIPANT**:

DocuSigned by:
Ronald Guadagno
B797936CE0D44FD...

Name: Guadagno, Ronald

**Address**: 1151 Estrella Dr.
Santa Barbara, CA 93110

**Email**: ron.guadagno@argano.com

**COMPANY**:

ARGANO ULTIMATE HOLDINGS, LLC

By: Harry B. Register, III
Title: Chief Executive Officer